# United States Court of Appeals
## For the First Circuit

No. 09-1690

JOSEPH PARSLEY

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Jeanne M. Kempthorne for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief for appellee.

May 17, 2010

**LYNCH, Chief Judge**.  Joseph Parsley was convicted for his role in a massive drug importation and distribution conspiracy in Maine.  He was sentenced to eighty-seven months' imprisonment. Later, he filed a motion under 28 U.S.C. § 2255 in the district court to vacate his sentence, on the ground that he had not been properly advised by his trial counsel on the option of not going to trial but instead entering an "open" guilty plea and then contesting at sentencing the quantity of drugs attributable to him. This, Parsley argues, was a constitutionally deficient performance, under the first prong of Strickland v. Washington, 466 U.S. 668 (1984).  Parsley claims that because he did not fully consider this option, and indeed because trial counsel did not urge it, he did not plead and so was denied the opportunity for a two-level reduction for acceptance of responsibility in his Sentencing Guidelines offense level.  We affirm the district court's conclusion that trial counsel did not render ineffective assistance on these facts, which are largely uncontested and not clearly erroneous.

I.

We take the facts as found by the district court and based on the uncontested portions of the record.  To the extent any of the district court's findings of fact are in dispute, we conclude there was no clear error.

-2-

On October 13, 2005, Parsley was indicted along with ten other defendants for, inter alia, conspiracy to import marijuana from a place outside the United States, under 21 U.S.C. §§ 960(b)(2), 963, and conspiracy to distribute and possess with the intent to distribute marijuana, under 21 U.S.C. §§ 841, 846. The conspiracy lasted from November 2003 to June 2005 and involved the importation of marijuana from Canada. Parsley's role was limited to that of a courier, picking up and transporting the drugs after the drugs arrived in the United States.

Parsley was arrested in New York on November 4, 2005, and was initially represented by a New York lawyer. This lawyer in turn asked trial counsel, a Maine attorney with about twenty years of experience specializing in criminal defense, to act as local counsel in proceedings in the district of Maine. Parsley paid trial counsel a flat fee, which was not contingent on whether the case went to trial.

Plea negotiations followed. Both sides believed that the government had a strong case against Parsley. In the negotiations, the government insisted that Parsley accept responsibility for at least 750 kilograms of marijuana if there was to be a plea agreement. Parsley refused. That 750 kilograms of marijuana corresponded to the total amount of marijuana that had been seized; the government believed it could prove a much larger amount if put to its proof. Having reviewed discovery materials with his

lawyers, Parsley insisted that he was responsible for a lesser quantity of drugs than 750 kilograms. The government refused to lower the drug quantity in the bargaining, and Parsley was counseled by the New York lawyer to take the plea agreement.

As these plea negotiations broke down, Parsley decided to proceed with Maine counsel alone. Parsley believed that the New York lawyer simply "wanted to get rid of the case" and was not willing to make further efforts without receiving more money. When he agreed to take the lead role, the Maine trial counsel decided not to ask for additional compensation.

At the time trial counsel took over the case, Parsley was determined to take the case to trial if he could not get a satisfactory plea agreement with the government. Parsley's New York lawyer had missed some deadlines on filing suppression motions, which trial counsel immediately turned to addressing. Maine counsel's understanding was that at this point Parsley had no interest in pleading guilty, and there was, as a result, only limited further discussion about a guilty plea.

Nonetheless, counsel did discuss with Parsley his different options and the possible sentencing ramifications of those choices. Counsel explained the possibility of receiving a sentencing reduction for acceptance of responsibility. Counsel also discussed with Parsley the possibility of making an open

-4-

guilty plea and then contesting the drug quantity numbers at sentencing.

Having reviewed the government's evidence, counsel advised Parsley that challenging the drug quantity at sentencing would be a risky strategy because the government would only have to prove drug quantity under the preponderance-of-the-evidence standard. Trial counsel believed that the government could prove a larger drug quantity than 750 kilograms. He also informed Parsley that forcing the government to prove drug quantity could be enough to prevent Parsley from receiving an acceptance-of-responsibility reduction. Counsel testified that although he always discussed with his clients the possibility of pleading guilty and contesting the drug quantity at sentencing, "I don't know that I would ever recommend for somebody to do it."

Trial counsel did, however, have some difficulty convincing Parsley that pleading in federal courts worked differently from what Parsley had experienced in New York state court. Parsley believed that he could agree with prosecutors to a specific sentence. Counsel testified that Parsley never believed him that in federal court, even after reaching an agreement with the government, the district court itself would make its own findings on drug quantity and the appropriate sentence.

At some point before trial, the federal prosecutor on the case held a "reverse proffer" with Parsley and counsel, during

which the prosecutor presented to Parsley the evidence the government would introduce at trial. Parsley had requested a meeting with the federal prosecutor because he wanted to negotiate a lower sentence, and trial counsel believed the meeting would help Parsley understand the reality of his situation.

The federal prosecutor held the meeting because he felt that the evidence in the case was overwhelming and wanted to make sure that Parsley understood the consequences of going to trial. At this point, all of the other defendants in the conspiracy had pled guilty. The prosecutor made clear to Parsley in this meeting that the government was not willing to negotiate a lower drug quantity and that if Parsley elected to go to trial, the government could prove an even larger amount. The prosecutor also told Parsley that if Parsley's concern was only the quantity with which he was being charged, Parsley had the option of pleading guilty and then contesting the quantity at sentencing.

Parsley later testified that following the meeting he was confused by the prosecutor's statement that Parsley could plead guilty and just contest the drug quantity at sentencing. But Parsley apparently believed trial counsel's advice regarding the risks associated with this course of action. Although Parsley had earlier reconsidered pleading guilty due to pressure from his family, on realizing that he could not convince the government to

lower his sentence by lowering the drug quantity by agreement, Parsley was determined to go to trial.

Parsley also testified that he decided to go to trial in order to contest the drug quantity, but the district court rejected this claim. Trial counsel testified he would never advise a client to follow such a strategy and that he did not do so in this case, and the district court credited this testimony.

On December 14, 2006, Parsley was convicted by a jury on all counts following a four-day trial. Parsley's counsel's two-pronged trial strategy was to attack the credibility of the government's witnesses and to portray Parsley in as positive a light as possible. Consistent with trial counsel's testimony about his advice to Parsley, the defense did not at trial attempt to contest the quantity of drugs involved in the case.

Because of disagreements with trial counsel over how to approach his sentencing, Parsley sought assignment of other counsel and was provided with representation from the local federal public defender's office at his June 8, 2007, sentencing hearing. At that hearing, Parsley sought a sentence of seventy months; the government sought a sentence of ninety-seven months, which was at the bottom of the range recommended in Parsley's presentence report ("PSR").

Parsley's PSR found that Parsley was responsible for only 428.36 kilograms of marijuana, based on the quantity Parsley

personally transported, rather than the conspiracy-wide amount on which the federal prosecutor had relied during the reverse proffer.[1] The PSR also recommended a sentencing level reduction for Parsley's minor role in the conspiracy. The government did not challenge either recommendation.

At sentencing, the federal public defender for Parsley acknowledged that it was a very rare case in which a defendant benefitted from trying to dispute sentencing issues during trial. He said his client was truly remorseful, and he attempted to reconcile the tension between that remorse and Parsley's failure to plead guilty by saying his client may have been confused that a plea agreement was needed just to have entered a plea. He acknowledged that his client had indeed met with the prosecutor who had laid out the government's potential case against Parsley. At no time did the federal public defender say Parsley's trial counsel had rendered ineffective assistance or ask the court not to go forward with sentencing.

The district court adopted both PSR recommendations and departed downward one level from the PSR's recommended criminal history category. The court sentenced Parsley to eighty-seven

---

[1] The government tells us in a footnote that Parsley's sentence ended up more or less where it would have been if Parsley had pled guilty to 750 kilograms but then received the two level reduction for acceptance of responsibility. The government uses this to argue that Parsley suffered no prejudice in any event.

months' imprisonment, at the bottom of his Sentencing Guidelines range.

Nine months later, Parsley filed a motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. This motion raised a number of claims, including an argument that trial counsel had provided ineffective assistance, causing Parsley to go to trial rather than make a guilty plea that would have provided a basis for Parsley to argue for a two-level sentencing reduction for acceptance of responsibility. On November 13, 2008, a magistrate judge recommended that all of Parsley's claims be denied.

The district judge affirmed the Recommended Decision in part, but it concluded that if Parsley had pled guilty and if the court had granted Parsley an acceptance-of-responsibility reduction, that combination might have affected the ultimate sentence. On this view, the precise advice given to Parsley on pleading guilty was material. The district court therefore remanded to the magistrate judge for an evidentiary hearing "regarding the advice [counsel] gave to Parsley prior to trial."

That evidentiary hearing before the magistrate judge occurred on March 19, 2009. Parsley testified and the government presented two witnesses, Parsley's trial counsel and the federal prosecutor. In a March 27, 2009, Proposed Findings of Fact and Recommended Decision, the magistrate judge concluded that Parsley had been adequately informed of his options and that he had

ultimately been the person who decided to go to trial. As a result there was no ineffective assistance by trial counsel. The magistrate judge recommended denial of Parsley's motion to vacate and that no certificate of appealability should issue. The district court adopted both recommendations.[2]

## II.

On an appeal from the denial of a § 2255 motion following an evidentiary hearing we review the district court's legal determinations de novo and the court's findings of fact for clear error. Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010); Awon v. United States, 308 F.3d 133, 140 (1st Cir. 2002).

Criminal defendants are "entitled to 'effective assistance of competent counsel'" before deciding whether to plead guilty. Padilla v. Kentucky, 130 S. Ct. 1473, 1480-81 (2010) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "Under Strickland, we first determine whether counsel's representation 'fell below an objective standard of reasonableness.'" Id. at 1482 (quoting Strickland, 466 U.S. at 688). We then inquire "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694). With regard to plea agreements, counsel has a "critical obligation . . .

---

[2] This court granted a certificate of appealability in July 2009.

-10-

to advise the client of 'the advantages and disadvantages of a plea agreement." <u>Id.</u> at 1484 (quoting <u>Libretti</u> v. <u>United States</u>, 516 U.S. 29, 50-51 (1995)).  Our "review of counsel's performance must be deferential, and reasonableness must be considered in light of 'prevailing professional norms.'" <u>Peralta</u>, 597 F.3d at 79 (quoting <u>Strickland</u>, 466 U.S. at 688).

Parsley concedes the accuracy of the finding that trial counsel at least briefly discussed with Parsley the option of entering an open plea and contesting the drug quantities at sentencing in order to argue for a downward adjustment based on acceptance of responsibility.  He argues that counsel nonetheless provided ineffective assistance by counseling against the option, that this counseling effectively foreclosed Parsley from considering it, and that counsel failed to provide Parsley detailed information about how a decision to go to trial would impact his sentence.  Parsley further argues that it was counsel's responsibility, not merely to advise of the option, but to urge Parsley to pursue a strategy of pleading without an agreement and then contesting the drug amounts at sentencing.  Parsley also asserts, based on trial counsel's statement at the evidentiary hearing, "I don't know that I would ever recommend for somebody to [plead open and contest the drug quantity at sentencing]," that counsel advised Parsley based on a "categorical approach" to the option and that counsel failed to adequately consider the

circumstances of Parsley's case.  The magistrate judge and district court rejected these claims, as do we.

Based on the facts found by the district court, which are not clearly erroneous,[3] we affirm the district court's finding that the assistance provided by counsel did not fall below an objective level of reasonableness.  The district court supportably found that Parsley had been urged by counsel to plead guilty but that he chose not to do so because he believed he could get a better deal.  Parsley did not believe that in a federal case the prosecutor could not guarantee him a lower sentence, although he had been told otherwise.  Counsel reasonably presented to and discussed with Parsley his options.  Counsel also participated in the reverse proffer, during which the federal prosecutor explained to Parsley his options and the weight of the evidence against him.  The options discussed included the possibility of Parsley pleading guilty, contesting the drug quantity at trial, and pursuing a reduction for acceptance of responsibility.  Two lawyers thus outlined this possibility for Parsley, along with its risks.  That trial counsel did not urge Parsley to follow such a strategy and,

---

[3]     Parsley states that he does not contest the district court's finding of facts as clearly erroneous.  To the extent Parsley disputes the district court's finding that Parsley knew at the time that he could have entered an open plea and contested the drug quantity at sentencing, we conclude that the factual finding was not clear error.  There was ample evidence presented at the evidentiary hearing that both trial counsel and the federal prosecutor discussed this option with Parsley.

indeed, recommended against it, did not represent ineffective assistance.

The district court correctly followed the law in concluding that counsel had made a reasonable strategic choice in counseling his client. See Strickland, 466 U.S. at 689. Counsel's recommendations to Parsley were based on his evaluation of the discovery materials, the strength of the government's case, and his approximately twenty years of experience as a criminal defense attorney. The district court supportably found that counsel reasonably believed that the government was more than capable of proving the drug quantity it had alleged and counsel advised Parsley accordingly. Counsel reasonably advised Parsley that he could risk losing the acceptance of responsibility reduction if Parsley forced the government to prove the actual drug quantity. As the magistrate judge found,

> [n]o experienced criminal defense attorney would want his client to plead guilty and then mount a full blown evidentiary challenge to the drug quantities without being aware of the limited probability of success, given the burden of proof at a sentencing hearing. The risk of losing acceptance of responsibility credit existed and counsel had the obligation to inform Parsley of that fact.

Counsel acted reasonably.

Parsley argues a red herring: that counsel had adopted a per se approach that he would never advise a client to enter an open plea and challenge drug quantity at sentencing. That per se approach, he says, is inherently unreasonable and so establishes

-13-

ineffective assistance.  The record does not support his argument.  Counsel's statement was, "I don't know that I would ever recommend for somebody to [enter an open guilty plea and then contest drug quantity at sentencing]."  He did not say that he had a categorical rule against entering such pleas.  Counsel made clear that he always discussed an open plea as an option with his clients, and in this case counsel advised Parsley based on the particular evidence at the government's disposal.  Counsel's advice in this case, which the district court found to be reasonable, was not based on a per se view that defendants will always lose their sentencing reduction for acceptance of responsibility if they plead and then challenge the drug quantity at sentencing.

That Parsley may wish in hindsight that he had given greater consideration to the option he rejected does not mean that he was not properly advised on it.

The district court's judgment is <u>affirmed</u>.